MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

ACADIA L. SENESE (CABN 251287)
W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone:  (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: acadia.senese@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> RODRIGO AGUAYO, <br>   aka "Ayo" <br><br>         Defendant. | No. CR 12-0119 SI <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Date:  November 2, 2012 <br> Time:  11:30 a.m. |

**I.    Introduction**

   The defendant, Rodrigo Aguayo, pled guilty to a violation of Title 18, United States Code, Section 1962 (d) - Racketeering Conspiracy.  This Court set November 2, 2012, at 11:00 a.m. as the date for judgment and sentencing.  The government submits the following sentencing memorandum in order to advise the Court of the government's Sentencing Guideline calculation, its lack of objections to the final presentence report ("PSR"), and its sentencing recommendation.

   For the reasons set forth below, the government — consistent with its plea agreement with the defendant and the recommendation of the Probation Department — respectfully

recommends that the defendant be sentenced to the low-end of the Guideline range, *i.e.*, 135 months of imprisonment, followed by a term of five years of supervised release that includes a special search condition, and a $100 special assessment.

## II.     Offense Conduct

The defendant is a member of the 500 Block/C Street organization, which is a criminal street gang that constituted a racketeering "enterprise." The purposes of the enterprise were numerous, including promoting and enhancing the enterprise and the activities of its members and associates by committing murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, and other criminal activities. The 500 Block and C Street gangs fought against their enemies, such as the members of the Cypress Park Locos and the Sureño gangs.

The defendant has been a member of the 500 Block/C Street gang since 2006. As part of his membership, he agreed to conduct and to participate in the conduct of the affairs of the 500 Block/C Street gang through a pattern of racketeering activity. To maintain and increase his position in the gang, the defendant agreed that a member of the 500 Block/C Street gang would kill members of rival gangs, such as Sureño gang members and members of the Cypress Park Locos in South San Francisco.

The defendant's criminal history evidences his membership in the 500 Block/C Street Organization, his participation in the activities of the organization, and his agreement to further the purposes of the 500 Block/C Street enterprise by committing criminal acts. He has prior convictions for criminal conduct that occurred in the presence fellow gang members, including possessing a dangerous weapon and vandalism. Notably, on August 18, 2006, the defendant committed assault with a deadly weapon. He participated in a fight with some of his co-defendants in the instant indictment. The defendant - along with Joseph Ortiz (who has been charged in the Second Superseding Indictment with multiple murders) - attacked a group of victims who were wearing blue (Sureños claim the color blue and the number 13; Norteños claim the color red and the number 14). The defendant told the victims that he was a Norteño gang member and stated, "500 Block, South City." The defendant attacked the victims with a kitchen knife, striking one of the victims in the arm. Joseph Ortiz swung a hammer at the victims. Law

UNITED STATES' SENTENCING MEMORANDUM
CR 12-0119 SI                                             2

enforcement officers noted that the defendant was wearing a red shirt and a red colored belt, that he had a one dot tattooed on his right knuckle with four dots on his left knuckle.[1]  Indeed, the defendant is a registered gang member pursuant to California Penal Code Section 186.30.  His criminal conduct continued up until the indictment in this case; indeed, he has a pending state charge for assault with a deadly weapon.

### III.    Guidelines Calculation

The parties have set forth their understanding of the applicable Guidelines calculation in their written plea agreement.  *See* Plea Agt. ¶ 7(a) - (e).  The Probation Officer concurs with these calculations.  *See* PSR ¶¶ 60-70.  Accordingly, the defendant's adjusted offense level is 30 and his Criminal History Category IV, which yields a Guideline range of 135-168 months' imprisonment.  *See* PSR ¶ 81.

### III.    Discussion

#### A.    Applicable Sentencing Law

Under the current sentencing regime, the Court must sentence in accordance with the directions of 18 U.S.C. § 3553(a).  Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth specific considerations, including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; and the sentencing range under the Guidelines.  18 U.S.C. § 3553(a).  On appellate review, a sentence is reviewed for "unreasonableness" in light of these various factors.  *United States v. Booker*, 543 U.S. 220, 260-62 (2005).

Although the Supreme Court's decision in *Booker* has rendered the Sentencing

---

[1] The defendant does not receive any criminal history points for this conviction because it forms part of the conduct for the instant offense.  *See* U.S.S.G. § 4A1.2(a)(1)

UNITED STATES' SENTENCING MEMORANDUM
CR 12-0119 SI                                                    3

Guidelines advisory, the Guidelines still remain the "starting point and initial bench-mark" for sentencing. *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal quotation marks and citation omitted); *see United States v. Carty*, 520 F.3d 984, 991 (9th 2008) (*en banc*); *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011). While there is no presumption of reasonableness for a Guidelines range sentence, *see Carty*, 520 F.3d at 991-992, if a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. (citing *Gall v. United States*, 128 S. Ct. 586, 597 (2007); *see United States v. Munoz-Camarena,* 631 F.3d 1028, 1030 (9th Cir. 2011) ("A district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence.").

"As a general rule, the preponderance of the evidence standard is the appropriate standard for factual findings used for sentencing." *United States v. Armstead*, 552 F.3d 769, 777-78 (9th Cir. 2008); *see, e.g., United States v. Treadwell*, 593 F.3d 990, 1001 (2010). In addition, the sentencing court can consider all relevant information, including acquitted conduct, when determining a defendant's sentence, so long as the sentence imposed does not exceed the applicable statutory maximum and the court finds the conduct proven by a preponderance standard. *See, e.g., United States v. Scott*, 642 F.3d 791, 800-01 (9th Cir. 2011) (holding that use of acquitted conduct at sentencing does not violate the Constitution); *United States v. Mercado*, 474 F.3d 654, 656-57 (9th Cir. 2007) (reaffirming post-*Booker* validity of *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), which held that acquitted conduct may be used for sentencing, "'so long as that conduct has been proved by a preponderance of the evidence'") (quoting *Watts*, 519 U.S. at 157); *United States v. Massino*, 546 F.3d 123, 135-36 (2d Cir. 2008) (holding that "[w]hen the offense of conviction is a RICO conspiracy, relevant conduct may include underlying predicate acts, even if not proven at trial beyond a reasonable doubt, as long as the sentencing court finds that they were proven by the lower preponderance of the evidence standard") (internal quotation marks and citations omitted); *United States v. Yannotti*, 541 F.3d 112, 129-30 (2d Cir. 2008) (holding that "all information adduced during trial, including

acquitted conduct," can be considered at sentencing; "[w]hile a fact-finder is required to find guilt beyond a reasonable doubt, the sentencing court may find facts relevant to sentencing by the lower preponderance of the evidence standard").

Furthermore, a defendant convicted of a racketeering violation can be sentenced for "any act, whether or not charged against defendant personally, that qualifies as a RICO predicate under 18 U.S.C. § 1961(1) and is otherwise relevant under [U.S.S.G.] § 1B1.3." *United States v. Carrozza*, 4 F.3d 70, 77 (1st Cir. 1993) (footnote omitted); *see* U.S.S.G. § 1B1.3(a)(1)(B) (defining relevant conduct for sentencing "in the case of jointly undertaken criminal activity" as "all reasonably foreseeable acts and omissions of other in furtherance of the jointly undertaken criminal activity"); *see, e.g., United States v. Morales*, 655 F.3d 608, 636 (7th Cir. 2011) (affirming district court sentence that was based on acts of co-conspirators because "'each and every overt act of violence in connection with the RICO conspiracy, although perhaps not specifically agreed to by each and every defendant on every specific occasion, was nonetheless reasonably foreseeable to each and every defendant given the nature of their joint RICO enterprise.'") (quoting PSR adopted by the sentencing court); *United States v. Darden*, 70 F.3d 1507, 1544-45 (8th Cir. 1995) (holding that murder with which only others were charged but proven to have been aided and abetted by defendant was properly considered relevant conduct for the defendant's sentencing); *Carrozza*, 4 F.3d at 74-78 (holding that the defendant could be sentenced for murders not charged against him in the indictment or not charged at all in the indictment, so long as they were reasonably foreseeable to the defendant and were in furtherance of jointly undertaken criminal activity).

In discussing the law relating to racketeering conspiracy, the Supreme Court has pointed out that a "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, *but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. Salinas v. United States*, 522 U.S. 52, 65 (1997). The *Salinas* Court explained:

> He may do so in any number of ways short of agreeing to undertake all of the acts

> necessary for the crime's completion. *One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense.* It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, an so punishable in itself.
>
> It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.

*Id*. (emphases added).

Indeed, "in a RICO case, in determining the base offense level, the sentencing court should not limit its relevant conduct inquiry to the predicate acts charged against the defendant, but instead should consider all conduct reasonably foreseeable to the particular defendant in furtherance of the RICO enterprise to which he belongs.*"* *United States v. Marino*, 277 F.3d 11, 37 (1st Cir. 2002) (internal quotation marks and citations omitted).

### B.  A Sentence of 135 Months' Imprisonment is Appropriate

Given all the factors set forth under 18 U.S.C. § 3553(a), the government believes that a sentence at the low-end of the applicable Guidelines range is a reasonable and appropriate sentence in this case. The offense of conviction, racketeering conspiracy, is a serious offense, one of the more serious offenses under federal law. In addition, the defendant's history and circumstances also support the need for a substantial sentence. Despite strong family support, the defendant chose to continually participate in gang life over the course of his 24 years. His criminal conduct within the gang began as a juvenile and continued into adulthood, and includes acts of violence. One of his prior offenses was committed alongside Joseph Ortiz. Indeed, the defendant admitted that in order to maintain and elevation his position within the gang's structure, members would commits acts of violence, including murder. While the defendant may not have personally pulled the trigger in any killing, he agreed that his fellow gang members should do so, which, by itself, is a very serious and dangerous crime.

Accordingly, given, *inter alia*, the nature of the defendant's offense, the defendant's history and circumstances, the need to protect respect for the law, to deter future criminality, and to protect the public, the Court should sentence the defendant to a term of 135 months'

imprisonment.

//

## IV. Conclusion

In full consideration of the goals of sentencing, the United States respectfully requests that the Court sentence the defendant Rodrigo Aguayo to a term of 135 months' imprisonment, five years' of supervised release which includes a special search condition, and a $100 special assessment.

DATED: October 30, 2012                              Respectfully submitted,

                                                     MELINDA HAAG
                                                     United States Attorney

                                                By:  ___/s/_____
                                                     ACADIA L. SENESE
                                                     W.S. WILSON LEUNG
                                                     Assistant United States Attorneys